UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY,<br>a Delaware corporation,<br><br>       Plaintiff,<br>v.<br><br>MASTER METAL WORKS LLC,<br>a Georgia limited liability company,<br><br>       Defendant. | Civil Case No.<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Monster Energy Company ("Plaintiff" or "Monster"), a Delaware corporation, by and through its undersigned attorneys, files this Complaint against Defendant Master Metal Works LLC ("Defendant"), and alleges as follows:

## I. **JURISDICTION AND VENUE**

1.    This is an action for (a) trademark infringement under 15 U.S.C. § 1114; (b) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a); (c) trademark dilution under 15 U.S.C. § 1125(c); (d) trademark counterfeiting under 15 U.S.C. § 1114; (e) copyright infringement under 17 U.S.C. § 501 *et seq.*; (f) unfair competition under the common law of the State of Georgia; (g) Deceptive Trade Practices under O.C.G.A. § 10-1-372; and (h) encroachment in violation of O.C.G.A. § 23-2-55.

2.     The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, trademark counterfeiting, false designation of origin, and trademark dilution under 15 U.S.C. §§ 1116 and 1121(a) and has original subject matter jurisdiction over the copyright infringement claim under 17 U.S.C. § 501 *et seq*.  The Court also has original subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the claims arise under the laws of the United States.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims in this Complaint which arise under state statutory and common law, because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     This Court has personal jurisdiction over Defendant because it has a continuous, systematic, and substantial presence within this Judicial District and within Georgia.  Defendant has its principal place of business in this Judicial District.  Also, by selling and offering for sale infringing services and products in this Judicial District, and by committing acts of trademark infringement, trade dress infringement, false designation of origin, trademark dilution, trademark counterfeiting, copyright infringement, and unfair competition in this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c), as Defendant resides in this Judicial District and a substantial portion of the events herein took place in this Judicial District.

## II.  THE PARTIES

5.    Plaintiff Monster Energy Company is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.    Monster is informed and believes, and on that basis alleges, that Defendant Master Metal Works LLC is a limited liability company organized and existing under the laws of the State of Georgia, having a principal place of business at 307 Chapman Road, Byron, Georgia 31008.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

A.    **Monster's Trademarks, Trade Dress, and Copyrights**

7.    Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.

8.    In 2002, long before Defendant's acts described herein,  Monster launched its MONSTER ENERGY® drink brand, bearing its now famous ® mark ("Claw Icon Mark") and Monster Trade Dress.   A true and correct

representation of Monster's original MONSTER ENERGY® drink is shown below.



9.      Monster is the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon Mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 3,963,669 | All purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |
|  | 4,625,118 | Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy; shakes; chocolate energy shakes; Ready to drink tea and tea based beverages; ready to drink flavored tea, tea based beverages; ready to drink coffee and coffee based beverages; ready to drink flavored coffee and coffee based beverages; ready to drink chocolate based beverages | 06/04/2014 | 10/21/2014 |
|  | 4,822,675 | Lanyards; lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 8/26/2013 | 9/29/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 4,721,432 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | 3/12/2014 | 4/14/2015 |
|  | 5,889,011 | Cameras; headphones; audio speakers; wireless speakers; sunglasses; eyewear; cases for sunglasses and eyewear; smart watch; wearable activity trackers; sports helmets; video recordings featuring sports, extreme sports, and motor sports; downloadable software for mobile devices for playing games; downloadable electronic game software for use on mobile devices; downloadable game software; downloadable interactive game programs; downloadable video game software and programs; sports gloves, namely, protective work gloves in the nature of mechanics' gloves; beverageware; insulated beverage containers for domestic use; heat-insulated containers for beverages; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers; non-electric portable coolers; non-electric portable beverage coolers; shaker bottles sold empty; blender bottles sold empty; sports gloves, namely, work gloves in the nature of mechanics' gloves; toy cars; remote control toys, namely, cars; cornhole game sets; cornhole game boards; cornhole bags; surf boards; skate boards; snowboards; boxing gloves; mixed martial arts gloves; golf bags; punching bags; resistance bands for exercise; video game interactive remote control units; | 1/16/2019 | 10/22/2019 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | video game controller joystick, thumbstick and control-pad extensions; entertainment services, namely, providing online video games and providing temporary use of non-downloadable video games, computer games, electronic games, and interactive games; sponsoring tournaments and arranging contests featuring online gaming; providing a web-based system and on-line portal for customers to participate in online gaming operation, and coordination of game tournaments, leagues, and tours for recreational computer game playing purposes; entertainment services, namely, providing a website for online gaming; providing a website featuring information about online gaming and online gaming professionals; entertainment services in the nature of sporting events, performances and competitions, electronic sporting events and competitions, and music performances and events; providing a web site featuring entertainment information and news on athletes; organizing and conducting educational programs and activities in the nature of classes, workshops, and sports competitions for athletes in the field of athlete development; athlete development program, namely, athlete training and mentoring in the field of wake, ski, surf, snowboard, motocross, mountain bike, BMX, and skate; bar services; café services; coffee bars; mobile restaurant services; restaurant services; mobile café services for providing food and drink | | |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 5,022,676 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 05/28/2014 | 08/16/2016 |
|  | 5,580,962 | Nutritional supplements; nutritional supplements for purposes of boosting energy; dietary supplemental drinks in the nature of vitamin beverages; sport helmets; video recordings featuring sports, extreme sports and motor sports; silicone wristbands in the nature of bracelets; silicone bracelets; jewelry, namely, bracelets and wristbands; lanyard necklace; watches; stickers, sticker kits comprising stickers and decals; decals; posters; calendars; all-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags; clothing, namely, t-shirts, hooded shirts and hooded sweatshirts; sweat shirts, jackets, pants, bandanas, sweat bands, gloves and motorcycle gloves; headgear, namely, hats and beanies; non-alcoholic beverages, namely, energy drinks, sports drinks, and sports and/or energy drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 5/17/2018 | 10/9/2018 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 4,865,702 | Nutritional supplements in liquid form; Non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 02/02/2015 | 12/08/2015 |

10.    Attached hereto as Exhibits A1-A21 are true and correct copies of Monster's trademark registrations identified in Paragraph 9 of this Complaint, which are hereby incorporated by reference.  Collectively, those registrations and trademarks are referred to as the "Asserted Marks."

11.    Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,134,841, 3,434,822, and 3,434,821 are incontestable.

12.    As a result of Monster's substantial and continuous use of its Claw Icon Mark, Monster is also the owner of strong common-law rights in its Claw Icon Mark.

13.    In addition, Monster is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon Mark, including at least U.S. Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215, and VA 1-789-900 (the "Copyrighted Works").  Attached hereto as Exhibits B through E are true and correct copies of Monster's copyright registrations.

14.    In addition, since 2002, Monster has consistently used a protected distinctive trade dress (the "Monster Trade Dress") for its packaging and promotional materials, examples of which are shown below.



15.    Monster's successful line of MONSTER drinks has now grown to include numerous well-known products, which include or have included, for example, the following: original Monster Energy®; Lo-Carb Monster Energy®; Monster Assault®; Monster Energy® Import; Monster Energy Absolutely Zero®; Punch Monster®; Monster Energy Unleaded®; the Juice Monster® line of energy drinks; the Monster Energy Ultra® line of energy drinks; Monster Cuba-Lima®; Ubermonster®; the Monster Rehab® line of tea plus energy drinks; the Java Monster® line of dairy based coffee plus energy drinks; the Muscle Monster® line of energy shakes; Caffé Monster®; Espresso Monster®; the Monster Maxx® line of energy drinks; the Monster Dragon Tea® line of energy drinks; and the Monster Hydro® line of drinks, among others (referred to collectively as "MONSTER line of drinks").

16.    The containers of the MONSTER line of drinks all prominently display Monster's Claw Icon Mark.  The MONSTER family of products has

achieved substantial commercial success.  Worldwide retail sales now exceed 3 billion cans per year with estimated retail sales exceeding U.S. $6 billion per year worldwide.  The MONSTER brand has established itself as the best-selling energy drink brand in the United States.

17.    Monster's Claw Icon Mark and Monster Trade Dress are the subject of substantial and continuous marketing and promotion by Monster in connection with its MONSTER line of drinks, apparel, and accessories.  Since 2002, Monster has spent in excess of $6.2 billion dollars promoting and marketing its MONSTER brand, including the Claw Icon Mark and the Monster Trade Dress.  In 2016 alone, Monster spent $467 million dollars advertising, promoting, and marketing its brand, marks, and trade dress.

18.    Monster's promotional efforts also include – by way of example but not limitation – using and displaying the Claw Icon Mark and Monster Trade Dress on, in, or in connection with widespread distribution of promotional and point of sale materials; product samplings; apparel and merchandise; trucks and other vehicles; magazines and other industry publications; Monster's website, social media sites, and other Internet websites; attendance at trade shows; and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.

19.    Shown below are true and accurate representative pictures illustrating just some of the examples of Monster's marketing and promotional efforts that use the Claw Icon Mark and Monster Trade Dress in connection with trucks and vehicles.

 

20.    Monster sponsors numerous athletic events in connection with which it has used its Claw Icon Mark and/or Monster Trade Dress. These events include or have included, for example, NASCAR's premier series, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, the Ultimate Fighting Championship ("UFC"), and the X Games. At Monster-sponsored events, Monster's Claw Icon Mark and Monster Trade Dress are prominently promoted at the tracks, on banners, and on large transport, support, and hospitality tractor trailers, motor homes, and other promotional vehicles.

21.     In addition to the sporting events above,  Monster also sponsors more than 200 athletes or athletic teams who compete in a wide-variety of sports, including motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, off-road truck racing, and various classes of NASCAR racing.   Many of the events that the Monster-sponsored athletes and athletic teams compete in are broadcast nationally on television, and the broadcasts display the Claw Icon Mark and/or Monster Trade Dress.

22.     Examples of the Claw Icon Mark and Monster Trade Dress appearing on vehicles as part of Monster's sponsorship activities are shown, for example, below.






23.    During motorsport events involving Monster-sponsored athletes and teams, the athletes and teams use tools and equipment to repair Monster-sponsored vehicles such as race cars, trucks, and motorcycles.  These vehicles, and the uniforms of the athletes and team members, prominently display the Claw Icon Mark and Monster Trade Dress.  As a result, when motorsports events are broadcast on television or the internet, viewers observe the Claw Icon Mark and Monster Trade Dress in close proximity with tools and equipment.

24.    Many of Monster's sponsorships involve athletes and teams that are co-sponsored by tool companies such as Dewalt, Stanley, MAC Tools, Mechanix Wear, Makita, and GearWrench.  Below are true and accurate representative pictures illustrating examples of Monster and tool companies co-sponsoring motorsport athletes and/or teams:







25.    Monster has also engaged in promotional activities with the tool industry since at least 2006.   Monster has authorized the use of its Claw Icon Mark and Monster Trade Dress in connection with tool company promotions and licensed the Claw Icon Mark and Monster Trade Dress for use on toolboxes.

26.    For example, between September 2006 and January 2007, Monster engaged in a marketing campaign with Makita.   Under this program, known as the

Monster Makita Ultimate Truck Sweepstakes, the grand-prize winner received a GMC truck filled with MONSTER ENERGY® drinks and Makita tools. Seventy-five (75) first prizewinners also received a Makita LXT600 six-piece combo tool kit valued at $699. Below is a true and accurate representative picture illustrating an advertisement for this sweepstakes:



27.    In addition, Monster has authorized the use of its Claw Icon Mark and Monster Trade Dress in connection with licensed toolboxes. For example, in 2012, Monster authorized the use of the Claw Icon Mark on a limited-edition series of Snap-on toolboxes in connection with Monster's sponsorship of Ken Block.

Below are true and accurate representative picture of the Ken Block toolbox and pictures of Kawasaki toolboxes bearing the Claw Icon Mark and Monster Trade Dress:





28.     Monster also markets and promotes its beverage products in stores that are not traditional beverage channels, such as Lowe's, Auto Zone, and Home Depot.    For example, Monster conducts sampling events and other activities featuring the Claw Icon Mark and Monster Trade Dress in hardware and department stores such as Lowe's, Home Depot, Sears, and Walmart.

29.     Monster has also distributed millions of point-of-sale marketing items bearing its Claw Icon Mark and Monster Trade Dress.    These point-of-sale marketing items include, but are not limited to, case stackers, stickers, displays for shelves, suction cup racks and coolers.    Below are true and accurate representative pictures illustrating examples of Monster's point-of-sale materials bearing Monster's Claw Icon Mark and Monster Trade Dress.






30.    Monster also widely markets and promotes the Claw Icon Mark and Monster Trade Dress to consumers through clothing sales and giveaways. Since 2002, Monster has licensed, sold and/or given away millions of items of clothing bearing its Claw Icon Mark and Monster Trade Dress. Below are true and accurate representative pictures illustrating examples of Monster's clothing, hats, and other items bearing Monster's Claw Icon Mark and/or Monster Trade Dress.



31.    Monster's Claw Icon Mark and Monster Trade Dress also receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram and YouTube accounts.    As of March 2020, Monster's Facebook page has over 25.8 million "likes"; Monster's Instagram page has approximately 6.4 million followers; Monster's Twitter page has approximately 3.1 million followers; and Monster's YouTube page had over 410 million views.  Monster's Claw Icon Mark and Monster Trade Dress are displayed on these websites and social media sites.

32.    As a result of Monster's substantial use and promotion of its Claw Icon Mark and Monster Trade Dress in connection with its MONSTER family of products, the mark and trade dress have acquired great value as specific identifiers of Monster's products and serve to identify and distinguish Monster's products from those of others.  Customers in this Judicial District and elsewhere readily recognize Monster's Claw Icon Mark and Monster Trade Dress as a distinctive designation of the origin of Monster's drinks, clothing, accessories, sports gear, and many other products and promotional items.  The mark and trade dress are intellectual property assets of enormous value as symbols of Monster and its quality products, reputation, and goodwill.

**B.**    **Defendant's Activities**

33.    Monster is informed and believes, and on that basis alleges, that Defendant is engaged in the business of offering welding and metal fabrication services.

34.    Without permission or consent from Monster, Defendant is using Monster's Claw Icon Mark and Monster Trade Dress in connection with Defendant's business.

35.    For example, as shown in the images below, Defendant is prominently using Monster's Claw Icon Mark, the Copyrighted Works, and the Monster Trade

Dress in connection with Defendant's business name and to promote Defendant's goods and services.











36.    At no time has Monster ever given Defendant license, permission or authority to use or display any of Monster's marks or trade dress, including the Claw Icon Mark, Copyrighted Works, or Monster Trade Dress.

37.    On or about October 24, 2019, Monster sent Defendant a cease and desist letter notifying Defendant of Monster's trademark rights in the Claw Icon Mark and the Monster Trade Dress.  The letter notified Defendant that its activities constituted trademark infringement, trademark dilution, and false designation of origin, and demanded that Defendant, *inter alia*, cease all use of Monster's marks and trade dress.  Defendant did not respond to that letter.

38.    On or about December 5, 2019, Monster sent Defendant a second letter again notifying Defendant of Monster's trademark rights in the Claw Icon Mark and the Monster Trade Dress, notifying Defendant that its activities

constituted trademark infringement, trademark dilution, and false designation of origin, and reiterating Monster's demand that Defendant, *inter alia*, cease all use of Monster's marks and trade dress.  Defendant did not respond to that letter.

39.     Despite having received these letters, Defendant blatantly continued its unauthorized use of Monster's Claw Icon Mark and the infringing trade dress.

40.     Monster is informed and believes, and on that basis alleges, that Defendant is using Monster's Claw Icon Mark and an infringing trade dress in an attempt to falsely associate its business and the goods and services it offers with Monster or to otherwise trade upon Monster's valuable reputation and customer goodwill in its MONSTER family of products.

41.     Monster is informed and believes, and on that basis alleges, that Defendant's infringing uses described herein are designed and intended to cause confusion, mistake, or deception as to the source of the goods and services that Defendant offers.

42.     Monster is informed and believes, and on that basis alleges, that Defendant's infringing uses described herein are intended to cause consumers and potential customers to believe that Defendant's business and the goods and services that Defendant offers are associated with Monster or its products, when they are not.

43.     By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster and Defendant and Monster's and Defendant's goods and/or services by unlawfully trading on and using Monster's Claw Icon Mark, or marks confusingly similar thereto, and the Monster Trade Dress, or a trade dress confusingly similar thereto, without Monster's permission or consent.

44.     Further, at no time has Monster ever given Defendant license, permission, or authority to reproduce, prepare derivative works of, or to distribute copies of Monster's Copyrighted Works.

45.     Defendant has also unlawfully copied protected elements of Monster's Copyrighted Works.

46.     Monster is informed and believes, and on that basis alleges, that Defendant had access to Monster's Copyrighted Works at least because Monster uses its copyrights on its packaging (which is displayed at retail stores that are open to the public), its widespread promotional materials, and its publicly-available website and social media sites.  Monster is also informed and believes, and on that basis alleges, that Defendant accessed this publicly available information.

47.     Monster is informed and believes, and on that basis alleges, that Defendant has used and is using protected elements of Monster's Copyrighted

Works, and has used and is using elements that are substantially similar to protected elements of Monster's Copyrighted Works.

48.    Monster is informed and believes, and on that basis alleges, that Defendant's acts complained of herein are willful and deliberate.  For example, Defendant was put on notice of Monster's intellectual property rights at least after receiving two cease and desist letters from Monster but thereafter continued with its infringing activities.

49.    Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial.  Such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

50.    Defendant's acts complained of herein also have caused Monster to suffer further irreparable injury to its business.  Monster will continue to suffer substantial loss of goodwill and reputation unless and until Defendant is permanently enjoined from its wrongful acts complained of herein.

## IV.  <u>FIRST CLAIM FOR RELIEF</u>

### (Trademark Infringement under 15 U.S.C. § 1114)

51.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-50 of this Complaint as though fully set forth herein.

52.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

53.     Defendant has used in commerce, without permission of Monster, reproductions, copies or colorable imitations of at least Monster's marks that are the subject of Monster's U.S. Trademark Registrations listed above in Paragraph 9 of this Complaint, including, but not limited to, U.S. Trademark Registration Nos. 3,963,668; 4,051,650; 3,908,600; and 3,908,601, in connection with Defendant's business and the goods and services offered by Defendant.  Such use is likely to cause confusion, or to cause mistake, or to deceive.

54.     Monster is informed and believes, and on that basis alleges, that Defendant's activities complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant or its goods and services are associated with, sponsored by, originated from, or are approved by Monster, when, in truth and fact, they are not.

55.     Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of Monster's registered marks, and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1114.

56.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

57.    Defendant, by its actions, has irreparably injured Monster.    Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.  <u>SECOND CLAIM FOR RELIEF</u>

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin under 15 U.S.C. § 1125(a))

58.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-57 of this Complaint as though fully set forth herein.

59.    This is a claim for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

60.    As a result of the widespread use and promotion of Monster's Claw Icon Mark and Monster Trade Dress, the marks and trade dress have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the marks and trade dress with Monster.

61.    Defendant has infringed Monster's Asserted Marks and Monster Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, marks confusingly similar to Monster's Asserted Marks and using a trade dress confusingly similar to the Monster Trade Dress in

connection with Defendant's business and the goods and services offered by Defendant.

62.    Defendant's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of Monster with Defendant, and/or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a).

63.    Monster is informed and believes, and on that basis alleges, that Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant or the goods and services offered by Defendant are associated with, sponsored by, or approved by Monster, when they are not.

64.    Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the Asserted Marks and Monster Trade Dress, and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1125(a).

65.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

66.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is permanently enjoined by this

Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  THIRD CLAIM FOR RELIEF

### (Federal Dilution under 15 U.S.C. § 1125(c))

67.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-66 of this Complaint as though fully set forth herein.

68.    This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

69.    Products sold under Monster's Claw Icon Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world.  By virtue of the wide renown acquired by Monster's Claw Icon Mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark, Monster's Claw Icon Mark is famous, and became so prior to Defendant's acts complained of herein.

70.    Defendant's unauthorized commercial use of Monster's Claw Icon Mark in connection with Defendant's business and the goods and services offered by Defendant has caused and is likely to continue to cause dilution of the distinctive qualities of the famous Claw Icon Mark.

71.    Defendant's acts are likely to tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon Mark, and quality of products associated therewith.

72.    Monster is informed and believes, and on that basis alleges, that Defendant's acts of dilution have been willful and deliberate.

73.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

74.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VII.  FOURTH CLAIM FOR RELIEF

### (Trademark Counterfeiting Under 15 U.S.C. § 1114)

75.    Monster incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-74 of this Complaint as if set forth fully herein.

76.    This is a claim for trademark counterfeiting arising under 15 U.S.C. § 1114.

77.    Defendant has intentionally used in commerce, without permission from Monster, marks that are identical to or substantially indistinguishable from

Monster's registered Claw Icon Mark, including at least the marks that are the subject of Monster's U.S. Trademark Registration Nos. 3,963,668; 4,051,650; 3,908,600; and 3,908,601 in connection with at least, for example, Defendant's clothing. Such use is likely to cause confusion, or to cause mistake, or to deceive.

78. Monster is informed and believes, and on that basis alleges, that Defendant has used the non-genuine marks in connection with its business knowing that the marks are counterfeit. Monster is informed and believes, and on that basis alleges, that the Defendant's activities complained of herein constitute willful and intentional trademark counterfeiting, and that Defendant acted with an intent to unfairly compete against Monster, to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's goods are associated with, sponsored by, or approved by Monster, when, in fact, they are not.

79. Monster is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Monster's ownership and prior use of the registered marks and without the consent of Monster, has willfully and intentionally violated 15 U.S.C. § 1114. Monster is further informed and believes, and on that basis alleges, that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

80. Defendant, by its actions, has irreparably injured Monster and

damaged Monster in an amount to be determined at trial.  Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VIII.  FIFTH CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. § 501 *et seq.*)

81.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-80 of this Complaint as though fully set forth herein.

82.    This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq.*

83.    Monster is the owner of valid and enforceable copyrights in the Claw Icon, including can art and packaging displaying the Claw Icon, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

84.    Monster has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Works, and has obtained Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215 and VA 1-789-900.

85.    Defendant's deliberate copying of Monster's Copyrighted Works infringes and continues to infringe Monster's copyrights in violation of 17 U.S.C. § 501(a).  Defendant is directly infringing on Monster's exclusive right to reproduce copies, make derivative works and distribute copies of its Copyrighted Works under 17 U.S.C. §§ 106(1)–(3).

86.    Monster is informed and believes, and on that basis alleges, that Defendant's infringement has been willful and deliberate.

87.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

88.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## IX.  SIXTH CLAIM FOR RELIEF

### (Georgia Common-Law Unfair Competition)

89.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-88 of this Complaint as though fully set forth herein.

90.    This is a claim for unfair competition arising under Georgia common law.

91.    Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition under Georgia common law.

92.    By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and

elsewhere, thereby unfairly competing with Monster in violation of the common law of the state of Georgia.

93.     Monster is informed and believes, and on that basis alleges, that Defendant's actions have been willful and deliberate.

94.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

95.     Defendant, by its actions, has irreparably injured Monster.   Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## X.  SEVENTH CLAIM FOR RELIEF

### (Deceptive Trade Practices Under O.C.G.A. § 10-1-372)

96.     Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-95 of this Complaint as though fully set forth herein.

97.     This is a claim for deceptive trade practices arising under O.C.G.A. § 10-1-372.

98.     By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby engaging in deceptive trade practices in violation of O.C.G.A. § 10-1-372.

99.    Monster is informed and believes, and on that basis alleges, that Defendant's actions have been willful and deliberate.

100.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## XI.  <u>EIGHTH CLAIM FOR RELIEF</u>

### (Encroachment in Violation of O.C.G.A. § 23-2-55)

101.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1-100 of this Complaint as though fully set forth herein.

102.    This is a claim for encroachment arising under O.C.G.A. § 23-2-55.

103.    By virtue of the acts complained of herein, Defendant has caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby engaging in encroachment in violation of O.C.G.A. § 23-2-55.

104.    Monster is informed and believes, and on that basis alleges, that Defendant has knowledge of Monster's prior use of the Claw Icon Mark and/or Monster Trade Dress and is using the Claw Icon Mark and/or Monster Trade Dress with an intent to deceive the public as to Defendant's affiliation with Monster.

105.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is permanently enjoined by this

Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## XII.  **PRAYER FOR RELIEF**

WHEREFORE, Monster respectfully requests that the Court award the following relief:

1.     That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief herein;

2.     That the Court render a final judgment declaring Defendant has violated and willfully violated 15 U.S.C. § 1114 by infringing Monster's trademark rights in its U.S. Trademark Registrations listed above in Paragraph 9 of this Complaint, including, but not limited to, U.S. Trademark Registration Nos. 3,963,668; 4,051,650; 3,908,600; and 3,908,601;

3.     That the Court render a final judgment declaring that Defendant has violated and willfully violated 15 U.S.C. § 1125(a) by infringing Monster's Asserted Marks, including the Claw Icon Mark, and by infringing the Monster Trade Dress;

4.     That the Court render a final judgment declaring that Defendant has violated and willfully violated 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon Mark;

5.     That the Court render a final judgment that Defendant has violated

and willfully violated 15 U.S.C. § 1114 by using counterfeit copies of Monster's registered trademarks, including at least the marks that are the subject of U.S. Trademark Registration Nos. 3,963,668; 4,051,650; 3,908,600; and 3,908,601;

6.     That the Court render a final judgment declaring that Defendant has violated and willfully violated 17 U.S.C. § 501(a) by infringing Monster's Copyrighted Works;

7.     That the Court render a final judgment declaring Defendant has violated and willfully violated Georgia common law by unfairly competing with Monster;

8.     That the Court render a final judgment declaring Defendant has violated and willfully violated O.C.G.A. § 10-1-372 by engaging in deceptive trade practices;

9.     That the Court enter a final judgment declaring Defendant has violated and willfully violated O.C.G.A. § 23-2-55 by encroaching upon Monster's trademark and trade dress rights;

10.     That Defendant, its officers, principals, agents, servants, employees, attorneys, successors, and assigns and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith permanently enjoined from:

a.     using Monster's Asserted Marks, including the Claw Icon

Mark, or the Monster Trade Dress in connection with Defendant's business or the goods or services offered by Defendant, including in connection with advertising, promoting, selling or offering to sell Defendant's goods or services, and/or using any confusingly similar variations of Monster's Asserted Marks and/or the Monster Trade Dress in any manner that is likely to create the impression that Defendant or the goods or services offered by Defendant originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b.     manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products or services bearing or using the Asserted Marks, Monster Trade Dress, and/or any confusingly similar marks or trade dress;

c.     without permission or authorization from Monster, copying, reproducing, distributing, displaying, creating derivative works of Monster's Copyrighted Works and/or importing, manufacturing, or producing any products bearing copies of Monster's Copyrighted Works;

d.     otherwise infringing Monster's Asserted Marks, Monster Trade Dress, or Copyrighted Works, or otherwise diluting the Claw Icon Mark or any of Monster's other trademarks;

e.    falsely designating the origin of Defendant's goods or services in any manner suggesting that the goods or services originate from Monster;

f.    unfairly competing with Monster in any manner whatsoever; and

g.    causing a likelihood of confusion or injury to Monster's business reputation;

11.    That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction pursuant to 15 U.S.C. § 1116;

12.    That Defendant be required to deliver and destroy all literature, advertising, goods, and other materials bearing the infringing marks pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503;

13.    That Defendant be required to account to Monster for any and all profits derived by Defendant and all damages sustained by Monster by virtue of Defendant's acts complained of herein;

14.    That Defendant be ordered to pay over to Monster all damages Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial;

15.    That Monster be awarded damages pursuant to 15 U.S.C. § 1117,

together with prejudgment and post-judgment interest;

16.     That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

17.     That Defendant's actions be deemed willful;

18.     That, at Monster's election, Defendant be ordered to pay over to Monster statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 for each of Monster's marks that Defendant has counterfeited;

19.     That Monster be awarded its damages and Defendant's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if Monster elects, that Monster be awarded statutory damages pursuant to 17 U.S.C. § 504;

20.     That an award of reasonable costs, expenses and attorneys' fees be awarded to Monster pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 504, and O.C.G.A. § 10-1-373(b);

21.     That Monster be awarded restitution and disgorgement; and

22.     For such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 11, 2020

/s/ *Ryan K. Walsh*
Ryan K. Walsh
rkwalsh@jonesday.com
Ga. Bar No. 735910
JONES DAY
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
Phone: (404) 521-3939
Facsimile: (404) 581-8330

*OF COUNSEL*
Steven J. Nataupsky (*Pro Hac Vice Application Forthcoming*)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (Lead) (*Pro Hac Vice Application Forthcoming*)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (*Pro Hac Vice Application Forthcoming*)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY